# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### FORT WAYNE DIVISION

| | | |
|---|---|---|
| In Re: The Affidavit of Support | ) | |
| (Form I-864) | ) | |
| | ) | |
| OLGA STUMP, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:04-CV-253-TS |
| | ) | |
| KENNETH STUMP, | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

Plaintiff Olga Stump's suit against her former husband, Kenneth Stump, arises out of an Affidavit of Support he signed under the Immigration and Nationality Act (INA), § 213A. The Plaintiff seeks to enforce the Affidavit of Support, and also seeks compensatory damages, attorney's fees, and costs.

This matter is before the Court on the Plaintiff's Motion for Partial Summary Judgment [DE 17], filed on February 10, 2005. The Plaintiff moves for judgment in her favor on the issue of the Defendant's obligation to provide her financial support under the Affidavit of Support and requests a trial on the issue of damages. The Defendant disagrees that the facts establish, as a matter of law, that he is liable to the Plaintiff.

## PROCEDURAL BACKGROUND

On July 1, 2004, the Plaintiff filed her Complaint in this Court against the Defendant under 8 U.S.C. § 1183a, also known as § 213A of the INA, for financial support. The Plaintiff prayed for an award of damages, specific performance, costs and attorney's fees, and any other equitable or

monetary relief the Court deemed appropriate. On August 16, 2004, the Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Defendant argued that the Plaintiff failed to plead essential elements required to state a claim when she did not allege that she received any "means-tested benefits" from any federal, state, or local government, and did not allege that she had attained permanent resident status. The Defendant also maintained that jurisdiction was proper in the state court, where the parties' divorce was pending. After considering the Defendant's motion under both Rules 12(b)(6) and (1), the Court denied the dismissal on October 21, 2004.

On February 10, 2005, the Plaintiff moved for summary judgment on the issue of liability. The Plaintiff contends that there are no material facts in dispute and that the issue of law—whether the Defendant must provide financial support to the Plaintiff according to the terms of the Affidavit of Support—should be decided in her favor.

On March 10, 2005, the Plaintiff moved to compel the Defendant to provide his Rule 26(a)(1) initial disclosures and for sanctions [DE 19]. She sought to bar the Defendant from raising any material fact that negatively impacted her Motion for Partial Summary Judgment if it was based upon information that he was required to include in his initial disclosures. She also sought attorney's fees incurred in filing the motion. On March 16, 2005, the Plaintiff informed the Court, by way of a Notice, that the Defendant had missed his summary judgment response filing deadline. The issues created by the Defendant's failure to timely respond were resolved by conference, motion, and order of the Court.

On April 12, 2005, the Defendant responded to the Plaintiff's Motion for Partial Summary Judgment. He argues that the Plaintiff cannot prevail on her claims unless she first establishes that

2

she has received means-tested benefits and is a lawful permanent resident of the United States. The Defendant also asserts that the Plaintiff, as the sponsored alien, has a statutory duty to seek and obtain gainful employment and that she has not demonstrated this. The Defendant contends that these matters are in dispute and are material to the question of liability, thus precluding summary judgment and requiring a trial on the merits. The Defendant did not respond to the motion for compel and for sanctions.

On April 25, 2005, the Plaintiff replied. She argues that receipt of means-tested benefits is not a prerequisite to enforcing a sponsor's financial obligations to the sponsored alien. She also contends that the resident status of the alien is immaterial and, if establishing permanent resident status is required, the Plaintiff meets this requirement. The Plaintiff argues that whether she is employed goes to the issue of damages, not to liability, and that the statute does not require her employment. The Plaintiff also notes that she is employed. Thus, the Plaintiff maintains that there are no genuine issues of material fact that would preclude summary judgment in her favor on the issue of the Defendant's liability under the Affidavit of Support.

Both parties agree that this case, where a sponsor is sued for financial support under § 213A of the INA, is one of first impression.[1]

---

[1] In *Tornheim v. Kohn*, 2002 WL 482534, at *3–6 (E.D.N.Y. Mar. 26, 2002), the district court dismissed the plaintiff's claims for enforcement of an Affidavit of Support and recovery of legal fees under 8 U.S.C. § 1183a. The court dismissed the claims because Congress required Form I-864 but, because the Attorney General failed to timely promulgate the new form under 8 U.S.C. § 1183a, the defendant signed Form I-134 instead. The court held that Form I-134 was not a legally binding contract under § 1183a.

3

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate—in fact, is mandated—where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted). "'Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *Abrams v. Walker*, 307 F.3d 650, 653 (7th Cir. 2002) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249–50;

4

*Doe*, 42 F.3d at 443.


## STATEMENT OF FACTS

The Plaintiff's "Statement of Material Facts" is not "supported by appropriate citations to discovery responses, depositions, affidavits, and other admissible evidence" as required by Northern District of Indiana Local Rule 56.1(a). Instead, the Plaintiff attaches her affidavit, in which she states that she has read her brief in support of partial summary judgment and that all the factual claims in the brief are true and verifiable. Nevertheless, the Defendant does not dispute the following facts asserted by the Plaintiff, some of which mirror the Complaint:

The Defendant and the Plaintiff met through the internet and started an inter-continental relationship. During this time, the Plaintiff was a Russian resident and lived in Russia. On April 20, 2001, the Defendant prepared and signed an Affidavit of Support, Form I-134, to obtain a fiancée visa to petition the Plaintiff to come to the United States.[2] The Plaintiff arrived in the United States under the fiancée visa in May 2002 and married the Defendant on May 20. Thereafter, the Defendant filed immigration documents, including the Affidavit of Support, Form I-864, to adjust the Plaintiff's status to lawful permanent resident of the United States.[3]

On June 10, 2003, the Plaintiff filed for divorce, alleging physical abuse by her husband. The Plaintiff has since stayed at various shelters and friends' homes and relied on the generosity of others. The divorce is currently pending, and the Defendant is not providing financial support to the Plaintiff.

---

[2] This is not the same Affidavit of Support that the Plaintiff sues to enforce.

[3] This Affidavit of Support, signed on May 28, 2002, is attached as Exhibit A to the Complaint.

As stated above, the Defendant does not dispute these facts. Rather, the Defendant contends that, to recover under the Affidavit of Support, the Plaintiff must establish certain facts that she has not pled or otherwise proven. Specifically, the Defendant argues that the Plaintiff must establish that she has received means-tested benefits, is a lawful permanent resident, and has mitigated her damages by obtaining employment.

Putting aside whether these are indeed prerequisites to enforcing the Affidavit of Support, there appears to be no dispute that the Plaintiff did not receive means-tested public benefits.

As to her alien status, the Plaintiff has submitted copies of papers from the Immigration and Naturalization Service which, she maintains, establish her permanent resident status. These uncertified papers have not been authenticated by an accompanying affidavit and the Court may not consider them. *See Woods v. City of Chicago*, 234 F.3d 979, 988 (7th Cir. 2000) (on summary judgment, court may consider material that would be admissible at trial, such as properly authenticated and admissible documents); *Martz v. Union Labor Life Ins. Co.*, 757 F.2d 135, 138 (7th Cir. 1985) (when a party seeks to offer evidence at summary judgment through exhibits other than depositions, discovery responses, and affidavits, the exhibits "must be identified by affidavit or otherwise made admissible in evidence"). Thus, the Plaintiff's permanent resident status remains in dispute. However, whether the Plaintiff's resident status is a material fact, i.e., one that affects the outcome of the motion for summary judgment, remains to be determined. *See Fanslow v. Chicago Mfg. Center, Inc.*, 384 F.3d 469, 478 (7th Cir. 2004) (noting that the substantive law will identify which facts are material and only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

6

The third issue of fact—whether the Plaintiff has sought and obtained employment— also remains in dispute as the Plaintiff has not presented any evidence on this point. In her reply brief, the Plaintiff submits that she has held a job for "a while now" but does not cite to admissible evidence in the record to support this fact. Again, whether this fact, like the Plaintiff's alien status, is material will be decided in the discussion section of this Opinion and Order.

## DISCUSSION[4]

Among the classes of aliens ineligible for immigrant visas, admission into the United States, or adjustment of status are those that are likely to become a "public charge," 8 U.S.C. § 1182(a)(4), unless such a person's application is accompanied by an Affidavit of Support, designated as Form I-864, 8 U.S.C. § 1182(a)(4)(C)(ii). The Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996 created § 213A of the INA to detail the requirements for these Affidavits of Support. The law provides that no Affidavit of Support will be accepted to establish that an alien is not inadmissible as a public charge unless the Affidavit is executed by the sponsor as a binding contract: in which the sponsor agrees: (1) to provide support to maintain the sponsored alien at an income that is at least 125% of the federal poverty guidelines until the sponsored alien has become a United States citizen, or the alien is credited with forty quarters of work; (2) that is legally enforceable against the sponsor by the sponsored alien, the federal government, any state, or by any other entity that provides any means-tested public benefits to the alien; (3) in which the sponsor agrees to submit to the jurisdiction of any federal or state court. 8 U.S.C. §§ 1183a(a)(1)(A)–(C) and

---

[4] The statutes, Code of Federal Regulations, and Form I-864 use "alien" and "immigrant" interchangeably, as will this Opinion and Order.

(a)(2) & (3).

The sponsor must demonstrate the means to maintain an annual income equal to at least 125% of the federal poverty guidelines, calculated according to the sponsor's household size. At minimum, the sponsor must submit certified copies of his individual federal income tax returns for his three most recent taxable years. 8 U.S.C. § 1183a(f)(6)(A)(i).

Under § 213A, family-sponsored immigrants are required to submit Form I-864. However, a fiancée is not required to submit INS Form I-864 because she is technically a nonimmigrant visa applicant. Fiancées use Form I-134, which is a nonenforceable promise by the sponsor to support the alien and that the alien will not become a public charge.[5] The spouse of an alien who entered the United States on a fiancée visa must complete Form I-864 when the alien spouse petitions to adjust her status after marriage.

**A. Means-Tested Public Benefits**

The Defendant argues that, to enforce the Affidavit of Support, the Plaintiff must have received means-tested benefits from the federal, state, or local government. The statute, however, contemplates not only actions against the sponsor for "reimbursement" by an entity who has paid means-tested benefits, but a separate action for "financial support" by a sponsored alien. *See* 8 U.S.C. §§ 1183a(a)(1)(B) (providing that the Affidavit of Support is "legally enforceable against the sponsor *by the sponsored alien*, the Federal Government, any State . . ., or by any other entity that provides any means-tested public benefit") (emphasis added); 8 U.S.C. §§ 1183a(e) (contemplating

---

[5] Part of the IIRIRA's reform was to replace Form I-134 with an affidavit that had the force of a contract, and to create categories of immigrants who would be required to file the new form upon applying for a visa or adjusting their status.

8

a cause of action to enforce an Affidavit against the sponsor "by the sponsored alien, with respect to financial support"); 8 C.F.R. § 213a.2(d) ("*The sponsored immigrant* or any Federal, state, or local government agency or private entity . . . may seek enforcement of the sponsor's obligations through an appropriate civil action.") (emphasis added); *see also* Anna Gallagher, 1 Immigration Law Service 2d, § 3:77 ("The effect of the contract is for the benefit of the applying alien, the U.S. government, or federal or local administers of means tested benefits programs. Both government officials as well as the person being sponsored have the right to sue for enforcement."); *Davis v. Davis*, 2004 WL 2924344, at *3 (Ohio Ct. App. Dec. 17, 2004) (finding that sponsored immigrant has independent standing to sue to enforce sponsor's obligation under Form I-864 and rejecting arguments that only federal government may enforce Affidavit of Support and that eligibility for federal means-tested benefits is condition precedent to enforcement).[6]

The statutory language specifically refers to an entity's suit as one "with respect to reimbursement." 8 U.S.C. § 1183a(e)(2); *see also* 8 U.S.C. § 1183a(b)(1) (setting forth procedures for "reimbursement of government expenses"). A sponsored alien's suit, by contrast, is one "with respect to financial support." *Id.* § 1183a(e)(1). An alien's receipt of means-tested benefits is the subject of an entity's suit for repayment, but is irrelevant to the sponsored alien's cause of action for financial support. Only the sponsor's agreement to provide support to the sponsored alien at 125% of the federal poverty line, *see* 8 U.S.C. § 1183a(a)(1)(A), is relevant to the alien's cause of action. Here, the Affidavit of Support executed by the Defendant contains such a promise. (Affidavit of Support at 4.)

---

[6] The court, finding that the sponsored immigrant could enforce the Affidavit of Support as part of her claim for legal separation, reversed the lower court's refusal to enforce the Affidavit on jurisdiction grounds. The court remanded the cause for further proceedings.

In addition, when the Defendant completed Form I-864, he agreed the Plaintiff could sue him if he failed to meet his obligations under the agreement:

> I understand that under section 213A of the Immigration and Nationality Act . . . this affidavit of support constitutes a contract between me and the U.S. Government. This contract is designed to protect the United States Government, and State and local government agencies or private entities that provide means-tested public benefits, from having to pay benefits to or on behalf of the sponsored immigrant(s), for as long as I am obligated to support them under this affidavit of support. *I understand that the sponsored immigrants* or any Federal, State, local, or private entity that pays any means-tested benefit to or on behalf of the sponsored immigrant(s), *are entitled to sue me if I fail to meet my obligations under this affidavit of support*, as defined by section 213A and INS regulations.

(Affidavit of Support at 5.) The Affidavit of Support also contained the Defendant's acknowledgment that § 213A(a)(1)(B) of the Act granted the sponsored immigrant "standing to sue [him] for failing to meet [his] obligations under this affidavit of support." (Affidavit of Support at 6.)

The Court rejects the Defendant's argument that the Plaintiff must establish receipt of means-tested benefits to prevail on her suit against the Defendant.


**B. Permanent Resident Status**

The Defendant contends that the Plaintiff's alien status is a question of fact that has not been resolved and which is material to the question of liability because only lawful permanent residents may seek enforcement of an Affidavit of Support. The Defendant, acknowledging that § 213A does not specify the immigration status that an alien must have been afforded to seek enforcement of an Affidavit of Support, looks to the regulations to defend his argument. The Defendant emphasizes a phrase in the section of the regulations entitled "Legal effect of affidavit of support." This section states:

10

> Execution of Form I-864 under this section creates a contract between the sponsor and the U.S. Government for the benefit of the sponsored immigrant, and any Federal, State, or local governmental agency or private entity that administers any means-tested public benefit programs. The sponsored immigrant, or Federal, State, or local governmental agency or private entity that provides any means-tested public benefit to a sponsored immigrant *after the sponsored immigrant acquires permanent resident status*, may seek enforcement of the sponsor's obligations through an appropriate civil action.

8 C.F.R. § 213a.2(d) (emphasis added). The Defendant also cites to one of the conditions for termination of support, listed in 8 C.F.R. § 213a.2(e), to back his argument that the Plaintiff must be a lawful permanent resident. Section 213a.2(e)(C) provides that a sponsor's obligation to support an immigrant terminates when the immigrant "[c]eases to hold the status of an alien lawfully admitted for permanent residence and has departed the United States." The Defendant argues that, since the sponsor's obligation ends when the immigrant is no longer lawfully admitted for permanent residence, the implication is that during the obligation period, the immigrant had to be a permanent resident.

The real question posed by the Defendant's argument is "when does the sponsor's obligation to support the sponsored alien begin?" The Defendant would like the answer to be: "when the sponsored immigrant has obtained permanent resident status." The statute provides a different starting point.

The statute states that the sponsor must agree to maintain the sponsored alien "during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). Under contract law principles, the Affidavit is binding and enforceable as a contract, when there is a valid offer, acceptance, and consideration. The Defendant does not dispute that the Affidavit of Support, Form I-864, is a valid contract, either now or when he signed it "in consideration of the sponsored immigrant not being found inadmissible to the United States under section 212(a)(4)(C) . . . and to

11

enable the sponsored immigrant to overcome this ground of inadmissibility." (Affidavit of Support at 4.)  Once the sponsor establishes that he has the financial resources to support the alien at 125% of the poverty level and signs Form I-864, which is designated as a legally enforceable contract, the Affidavit—and the sponsor's obligation—comes into force. Neither the statute nor the Affidavit sets forth any further conditions or terms that must be satisfied. The Defendant's obligation to support the Plaintiff began on May 28, 2002, when he signed Form I-864. The ending date of the period of enforceability is governed by 8 U.S.C. § 1183a(a)(2) & (3).

The regulations cited by the Defendant, and discussed below, do not change the beginning date of the period of enforceability to the date the sponsored immigrant obtains permanent resident status. Moreover, such a restriction would leave immigrants without financial support from the time they enter the United States on a visa and seek permanent resident status, until the date they obtain lawful resident status. Such a gap would defeat the purpose of the Affidavit, which is to overcome the public charge ground of inadmissibility based on the sponsor's willingness and ability to support the identified immigrant. It is significant that the ground of inadmissibility is determined at the time of admission or adjustment of status. Thus, Congress requires the immigrant to overcome this ground at the time of admission or adjustment of status. *See* 8 U.S.C. § 1182(a)(4) (including as an inadmissible alien "[a]ny alien who, . . . at the time of application for admission or adjustment of status, is likely at any time to become a public charge"). The ground, which applies to "any alien" who is likely "at any time" to become reliant on public financial assistance, could not be considered overcome at this time if the sponsor's obligation did not take effect until after the immigrant obtained lawful resident status.

**1. Section 213a.2(d)**

The Plaintiff disagrees with the Defendant's assessment of § 213a.2(d). She contends that § 213a.2(d) applies only to governmental agencies or private entities that provide means-tested benefits. Such entities can sue the sponsor for reimbursement after the immigrant has acquired permanent residency because aliens are generally not eligible for public benefits before they have attained the status of a lawful permanent resident.

The Court agrees with the Plaintiff. Section 213a.2(d) addresses sponsored immigrants separately from government agencies and private entities that have provides means-tested benefits, as evidenced by the use of a comma and the word "or." *See* 8 C.F.R. § 213a.2(d) ("The sponsored immigrant, or Federal . . . agency . . . may seek enforcement . . . ." ). The language "that provides any means-tested public benefit to a sponsored immigrant after the sponsored immigrant acquires permanent resident status" describes, or restricts, only the agencies and entities that may sue. It does not restrict immigrants who may sue. This interpretation is supported, not only by the structure of the sentence, but by the fact that restricting immigrants who could enforce an Affidavit to those who have *provided* "means-tested public benefit to a sponsored immigrant after the sponsored immigrant acquires permanent resident status" would not even make sense because immigrants do not provide means-tested benefits. Government agencies and private entities provide means-tested public benefits.

They do not typically provide such benefits, however, until an immigrant has acquired permanent resident status. Under the Welfare Reform Act, aliens lawfully admitted for permanent residence in the United States, with certain exception, are ineligible for most federally-funded means-tested public benefits during the first five years after being granted permanent residence. 8

13

U.S.C. § 1611 (only qualified aliens are entitled to Federal public benefits); 8 U.S.C. § 1641(b) (including in definition of qualified alien one who is lawfully admitted for permanent residence under the INA); *see also* (Affidavit of Support at 5) (disclosing five-year requirement).

The Defendant may not divorce the reference to permanent resident status in § 213a.2(d) from the rest of the clause and place it where he wants. Section 213a.2(d) simply was not meant to describe the alien status of a sponsored immigrant who could sue for enforcement of an Affidavit of Support. Nor can the Defendant, or this Court, ignore the statutory language that gives the "sponsored alien" the right to bring an action to enforce the Affidavit of Support. *See* 8 U.S.C. §§ 1183a(a)(1)(B) and (e). The statute does not give this right to the "sponsored alien holding permanent resident status;" the statute includes no such qualifiers.

### 2. Section 213a.2(e)

The Plaintiff argues that § 213a.2(e) stands only for the proposition that once a sponsored alien ceases to hold permanent residence status and has departed the United States, the sponsor's obligation statutorily ends. Both the loss of status and departure are required to end this obligation.

Again, the Court agrees. The use of the conjunctive "and" supports this interpretation. A sponsor's support obligation does not end upon the immigrant's loss of permanent resident status unless the immigrant had also departed the United States. In fact, in the Affidavit of Support, this condition is summarized so that there is no mention of permanent residence status. (Affidavit of Support at 4) ("I understand that my obligation will continue until my death or the sponsored immigrant(s) have become U.S. citizens, can be credited with 40 quarters of work, *depart from the United States permanently*, or die.") (emphasis added).

14

To the Defendant's point, the language "ceases to hold" lawful permanent resident status implies that the alien first held this status, since one cannot cease to hold something she never had. However, this implication, by itself, does not help the Defendant. The regulation does not imply that lawful permanent resident status is a prerequisite to enforcement of the Affidavit of Support. Nothing in the statute supports the conclusion that this implication should have the force of a prerequisite. *Cf. K Mart Corp. v. Cartier, Inc.* 486 U.S. 281, 291 (1988) (in ascertaining the plain meaning of the statute, the court must look to the particular statutory language at issue, as well as the language and design of the statute as a whole). It is more likely, given the entirety of the statute and regulations, and Form I-864 itself, that the drafters of the regulations wanted to emphasize that the sponsor's obligation would end when the immigrant was no longer lawfully admitted and departed the United States—not for a temporary departure, but for a permanent departure. This reason for termination of support is not even included in the statute, which only addresses citizenship and qualifying quarters of work. But the drafting agency believed that permanent departure, as well as death, were condition that would end the sponsor's obligation by operation of law.

It would be irresponsible for this Court to attach a condition of enforcement on the authority of a single regulatory clause that contains a questionable implication, which is not supported elsewhere in the statute or the regulations. In fact, such an interpretation would negate the purpose the Affidavit was intended to serve by leaving an immigrant without financial support from the time they enter the United States on a visa and seek permanent resident status, until the date they obtain such status.

The Plaintiff need not prove that she is a permanent resident to sue for financial support

15

under the Affidavit of Support. Thus, a dispute regarding whether she has obtained this status would not preclude summary judgment.

## C. Mitigation of Damages and the Plaintiff's Employment

The Defendant argues that requiring him to support the Plaintiff at 125% of the poverty level on the force of the Affidavit of Support alone would not align with Congress's intent that immigrants become self-reliant. The Defendant submits that § 213A places an affirmative duty on the alien to seek and obtain employment in the United States and to become self-reliant. The Defendant concludes that since the Plaintiff has not established that she has sought or obtained employment, her motion for summary judgment should be denied.

The Plaintiff submits that even if Congress's intent is that all immigrants be self-reliant, Congress has recognized that immigrants may require the help of their sponsors. Additionally, the Plaintiff contends that she is not relying solely on the Affidavit of Support to sustain herself, but has relied on the generosity of friends, stayed at shelters, and holds a job. The Plaintiff argues that the Affidavit of Support is a legally binding contract regardless of her work history. She believes that while mitigation of damages may affect the amount of money the Defendant is required to pay her, it does not affect liability, and summary judgment is appropriate.

The Court appreciates the Defendant's concern that the Affidavit of Support should not act as a "ticket for a free ride" at the sponsor's expense. However, the excerpts from congressional reports provided by the Defendant to bolster his claim that Congress intended immigrants to become self-reliant do not persuade this Court that the Plaintiff is precluded from enforcing the Affidavit of Support if she has not attained employment or otherwise sought to support herself. When the

congressional report excerpts are viewed in context, the pivotal role of the legally binding Affidavit of Support in Congress's plan for immigrant self-sufficiency is unquestionable. Given the choice between the taxpayers and a sponsor, Congress prefers, indeed requires, that a sponsor support an alien who has not become self-reliant.

For example, the Defendant cites Congress's intent that "[i]t should be made clear to immigrants that the taxpayers of this country expect them to be able to make it in this country on their own and with the help of their sponsors." S. Rep. No. 104-249, at 7 (1996). The Defendant argues that Congress intended immigrants, first, to become self-reliant but if adversity befalls them, then the sponsor is to assist. The discussion immediately preceding this quote demonstrates that the financial aid of sponsors was anticipated by Congress as vital to its reform of immigration policy. So vital, in fact, that the Affidavit of Support was to become a legally enforceable contract and the sponsor's obligation period extended.

> One of the ways immigrants are permitted to show that they are not likely to become a public charge is by providing an affidavit of support by a sponsor, who is often the U.S. relative petitioning for their entry under an immigrant classification for family reunification. Under current law, sponsors agree to provide support only for three years. Furthermore, the agreement is not legally enforceable.
> The committee believes that the sponsor affidavit should be legally enforceable and should be in effect until the sponsored alien (a) has worked for a reasonable period in this country, paying taxes and making a positive economic contribution, or (b) becomes a citizen, whichever occurs first.
>
> * * *
>
> The committee believes that "deeming" of the sponsor's income and assets to the sponsored alien should be required in nearly all welfare programs and for as long as the sponsor is legally liable for support, or 5 years (the period in which an alien can be deported as a public charge), whichever is longer.
> It is not unreasonable of the taxpayers of this country to require recently arrived immigrants to depend on their sponsors for at least the first 5 years, regardless of the specific terms in the affidavit of support signed by their sponsors.

17

*Id.* at 6–7.

The Defendant also cites to congressional discussion that "[s]elf reliance is one of the most fundamental principles of immigration law." This excerpt is contained in a discussion pertaining to expanding the public charge ground of inadmissibility and the belief "that all family-sponsored immigrants . . . should have affidavits of support executed on their behalf as a condition of admission." H.R. Conf. Rep. No. 104-828, at 240–241 (1996). The section of the report referencing Affidavits of Support concludes by stating that self-reliance is encouraged and that the intent of the legislation is "to establish a process that will authorize visas only for those applicants whose sponsors . . . and any non-petitioning sponsor . . . demonstrate the means to meet the applicable income requirements." *Id.* at 241.

By completing the Affidavit of Support, the Defendant demonstrated his ability to meet the income requirements to satisfy Congress that the Plaintiff would not become a public charge, with the Defendant as her sponsor. Nothing the Defendant cites negates the effect of the binding contract that he entered when he completed and signed the Affidavit of Support. The Defendant agreed to provide the Plaintiff "whatever support is necessary to maintain the sponsored immigrant(s) at an income that is at least 125 percent of the Federal poverty guidelines." (Affidavit of Support at 4.) The Defendant was required to agree to this level of support for the Attorney General or consular officer to accept the Affidavit. *See* 8 U.S.C. § 1183a(a)(1) (providing that no affidavit can be accepted to establish that an alien is not excludable as a public charge unless the "sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line"). When signing the Affidavit, the Defendant certified under penalty of perjury under the laws of the United States that he knew the contents of the Affidavit of

Support and made  it for the consideration stated in Part 7 (that the immigrant would not be found inadmissible on public charge grounds and would be able to overcome the public ground of inadmissibility ) freely and without any mental reservation or purpose of evasion.

The Act provides the specific conditions or events upon which a sponsor's obligation ends. The sponsored immigrant's failure to seek or obtain gainful employment is not such a condition or event. In fact, under this scenario, the sponsor's support is more likely necessary to keep the immigrant from becoming reliant on public financial assistance. Whether the Plaintiff's inability or unwillingness to obtain employment, if that is in fact the case, has consequences on the Plaintiff's status, including whether she becomes a deportable alien, is not at issue before this Court.[7]

The Defendant has not established that any of the issues he identifies bear on the question of his liability to financially support the Plaintiff under the terms of the Affidavit of Support. Because there are no genuine issues of material fact that preclude enforcement of the Affidavit of Support against the Defendant, the Plaintiff is entitled to judgment as a matter of law on the issue of the Defendant's liability. *See* Fed. R. Civ. P. 56(c) ("A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."). The amount of damages the Plaintiff may recover from the Defendant, and the most appropriate remedy for collection of damages, remains at issue in this case. *See* 8 U.S.C. § 1183a(c) (including judgment liens, enforcement of judgment remedies, installment payment orders, garnishment, and orders for specific performance among remedies available to enforce Affidavit of Support).

---

[7] The Defendant cites to 8 U.S.C. § 1227(a)(5) in support of his position that U.S. immigration policy requires that aliens become gainfully employed and self reliant. *See* 8 U.S.C. § 1227(a)(5) (stating that an alien is deportable if, within five years after the date of entry, he or she has become a public charge).

**D. Attorney's Fees and Costs**

One of the remedies available to the Plaintiff is "an order for . . . payment of legal fees and other costs of collection." 8 U.S.C. § 1183a(c) (describing remedies available to enforce Affidavit of Support). The Plaintiff's counsel has attached an Attorney's Affidavit for Legal Fees to the Motion for Partial Summary Judgment.

Federal Rule of Civil Procedure 54(d) addresses costs and attorney's fees.

(2) *Attorneys' Fees* (A) Claims for attorneys' fees and related nontaxable expenses shall be made by motion unless the substantive law governing the action provides for the recovery of such fees as an element of damages to be proved at trial.

(B) Unless otherwise provide by statute or order of the court, the motion must be filed no later than 14 days after entry of judgment; must specify the judgment and the statute, rule, or other grounds entitling the moving party to the award; and must state the amount or provide a fair estimate of the amount sought.

Fed. R. Civ. P. 54(d)(2)(A) & (B).[8] The Committee Notes to the 1993 Amendment to Rule 54 state that fees may be an element of damages when they are sought under the terms of a contract. In that case, the claim for attorneys' fees would be claimed as damages in a pleading and might involve issues to be resolved by a jury.

Whether the fees are an element of damages in this case was not directly addressed by either party. The Plaintiff alleges in her Complaint that she has a right to recover a reasonable fee for her attorney's services. Additionally, in her prayer for relief, she requests an award of costs and attorney's fees, as permitted in the Affidavit of Support, wherein the Defendant acknowledged the following: "I may also be held liable for costs of collection including attorney fees." (Comp., Prayer for Relief, ¶ 4) (Affidavit of Support at 6.) The Defendant argues, in response to the Plaintiff's

---

[8] Local Rule 54.1 also contemplates a 14-day period to file a request for assessment of attorney fees. N.D. Ind. L.R. 54.1.

motion for partial summary judgment, that the Plaintiff "is not entitled to seek attorney's fee[s] unless successful at the conclusion of the cause of action wherein the Plaintiff has prevailed." (Def.'s Resp. at 11.)

The statute contemplates an order for payment of legal fees and other costs of collection as one of the remedies available to enforce an Affidavit of Support. However, the statute does not make legal fees an element of damages. The Court can perceive of no benefit in requiring the Plaintiff to prove costs and legal fees in conjunction with the other damages that must be proven, rather than waiting until judgment has been entered to determine a reasonable fee and enter an order for payment of fees, if appropriate.

The Plaintiff's request for attorney's fees is premature. If the Plaintiff desires to seek attorney's fees after resolution of this case, she is advised to make a motion pursuant to Rule 54 and to submit documentation and affidavits that would support the award of fees she requests.

The Plaintiff's request for attorney's fees is denied with leave to refile at the conclusion of the damage portion of this case and entry of final judgment.

**CONCLUSION**

For the foregoing reasons, the Plaintiff's Motion for Partial Summary Judgment is **GRANTED IN PART** with respect to the issue of the Defendant's liability under the Affidavit of Support, Form I-864, and **DENIED IN PART WITHOUT PREJUDICE** as to the claim for attorney's fees. The trial date is vacated and a telephonic scheduling conference is set for Tuesday, June 7, 2005, at 11:00 a.m., to discuss the appropriate resolution of the damages issue. The Plaintiff's Motion to Compel and for Sanctions [DE 19] is **DENIED as MOOT**.

**SO ORDERED** on May 27, 2005.

 s/ Theresa L. Springmann
THERESA L. SPRINGMANN
UNITED STATES DISTRICT COURT