UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| In Re: The Affidavit of Support ) | |
| (Form I-864) ) | |
| ) | |
| OLGA STUMP, ) | |
|     Plaintiff, ) | |
| ) | |
| v. ) | CAUSE NO.: 1:04-CV-253-TS |
| ) | |
| KENNETH STUMP, ) | |
|     Defendant. ) | |

**OPINION AND ORDER**

This cause came before the Court for trial without a jury on September 13, 2005. The Plaintiff, Olga Stump, was represented by Apexa Patel and Craig Patterson. The Defendant, Kenneth Stump, was represented by Malcolm Gerber.

The Court's subject matter jurisdiction is predicated upon 8 U.S.C. § 1183a(e)(1) and 28 U.S.C. § 1331.

**PROCEDURAL BACKGROUND**

On July 1, 2004, the Plaintiff sued her former husband, Kenneth Stump, for financial support owing to her under the terms of an Affidavit of Support he signed pursuant to the Immigration and Nationality Act (INA), § 213A. *See* 8 U.S.C. § 1183a. The Plaintiff prayed for an award of damages, specific performance, costs and attorney's fees, and any other equitable or monetary relief the Court deemed appropriate.

On August 16, 2004, the Defendant filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Defendant argued that the Plaintiff failed to plead

essential elements required to state a claim when she did not allege that she received any "means-tested benefits" from any federal, state, or local government, and did not allege that she had attained permanent resident status. The Defendant also maintained that jurisdiction was proper in the state court, where the parties' divorce was pending. After considering the Defendant's motion under both Rules 12(b)(6) and (1), the Court denied the dismissal on October 21, 2004.

On February 10, 2005, the Plaintiff moved for summary judgment on the issue of liability. The Plaintiff stated that there were no material facts in dispute and that the issue of law—whether the Defendant must provide financial support to the Plaintiff according to the terms of the Affidavit of Support—should be decided in her favor.

On March 10, 2005, the Plaintiff moved to compel the Defendant to provide his Rule 26(a)(1) initial disclosures and for sanctions. She sought to bar the Defendant from raising any material fact that negatively impacted her Motion for Partial Summary Judgment if it was based upon information that he was required to include in his initial disclosures. She also sought attorney's fees incurred in filing the motion. On March 16, 2005, the Plaintiff notified the Court that the Defendant had missed his summary judgment response filing deadline. The issues created by the Defendant's failure to timely respond were resolved by conference, motion, and order of the Court.

On April 12, 2005, the Defendant responded to the Plaintiff's Motion for Partial Summary Judgment. He argued that the Plaintiff could not prevail on her claims unless she first established that she received means-tested benefits and was a lawful permanent resident of the United States. The Defendant also asserted that the Plaintiff, as the sponsored alien, had a statutory duty to seek and obtain gainful employment and that she had not demonstrated this. The Defendant contended that these matters were in dispute and were material to the question of liability, thus precluding

2

summary judgment and requiring a trial on the merits. The Defendant did not respond to the motion to compel and for sanctions.

On April 25, 2005, the Plaintiff replied. She argued that receipt of means-tested benefits is not a prerequisite to enforcing a sponsor's financial obligations to the sponsored alien. She also contended that the resident status of the alien is immaterial and, if establishing permanent resident status was required, the Plaintiff met this requirement. The Plaintiff argued that whether she was employed goes to the issue of damages, not to liability, and that the statute does not require her employment. Thus, the Plaintiff maintained that there were no genuine issues of material fact that would preclude summary judgment in her favor on the issue of the Defendant's liability under the Affidavit of Support.

Both parties agreed that this case, where a sponsor is sued for financial support under § 213A of the INA, is one of first impression.[1]

On May 27, 2005, the Court granted the Plaintiff summary judgment on the issue of liability under the Affidavit of Support, Form I-864. The Court denied the Plaintiff's claim for attorney's fees as both unsupported and premature and granted her leave to refile her request for attorney's fees at the conclusion of the damage portion of the case and entry of final judgment. The Court denied as moot the Plaintiff's motion to compel and for sanctions.

On August 30, 2005, the Court conducted a final pretrial conference. During that conference, the Plaintiff argued that judgment should enter in her favor without a trial because the Defendant

---

[1] In *Tornheim v. Kohn*, 2002 WL 482534, at *3–6 (E.D.N.Y. Mar. 26, 2002), the district court dismissed the plaintiff's claims for enforcement of an Affidavit of Support and recovery of legal fees under 8 U.S.C. § 1183a. The court dismissed the claims because Congress required Form I-864 but, because the Attorney General failed to timely promulgate the new form under 8 U.S.C. § 1183a, the defendant signed Form I-134 instead. The court held that Form I-134 was not a legally binding contract under § 1183a.

did not timely submit his portion of the Final Pretrial Order. The Court advised that the matter would continue to trial. On September 8, 2005, the Plaintiff filed a Motion to Strike and for Sanctions, requesting that the Court strike the Defendant's portion of the Pretrial Order, preclude the Defendant from presenting any evidence at trial, and order the Defendant to pay the attorney fees incurred in filing the Motion to Strike and for Sanctions.

At trial, the Court denied the Plaintiff's Motion to Strike, approved the Pretrial Order, and took the Motion for Sanctions under advisement. The Court clarified that liability was already established by the Court's summary judgment order and that the only issue for trial was the amount of damages the Defendant owed the Plaintiff under the Affidavit of Support. At the close of evidence, the Court set a briefing schedule. On September 28, 2005, the Plaintiff filed her post-trial brief. The Defendant filed his brief on October 14.

## FINDINGS OF FACT

The Plaintiff testified at trial. The Defendant, who also testified, did not contradict the Plaintiff's statements. The following facts are derived from the parties' testimony and the exhibits admitted at trial.

### A. Background

The Plaintiff is a Russian citizen who entered the United States on a fiancee visa. Shortly thereafter, on May 20, 2002, the Plaintiff and the Defendant were married in Fort Wayne, Indiana. On May 28, 2002, the Defendant signed an Affidavit of Support, Form I-864, as part of the Plaintiff's application for adjustment of status. The Defendant agreed to provide the Plaintiff

whatever support was necessary to maintain her at an income that is at least 125% of the federal poverty guidelines. The Defendant made this promise as consideration for the Plaintiff's application not being denied on the grounds that she was an immigrant likely to become a public charge. In the Affidavit, the Defendant indicated that he had a household size of 3 persons, including the Plaintiff, and an annual household income of $49,438.39. In 2002, 125% of the poverty level ($15,020) for a household of 3 was $18,775.

On June 3, 2003, the Plaintiff and the Defendant permanently separated. From the time of their separation to the date of trial the Plaintiff lived either with friends from church or in shelters in Fort Wayne, Indiana, Tampa, Florida, and Kalamazoo, Michigan.

**B. The Plaintiff's Income and Efforts to Obtain Employment**

Since her separation from the Defendant until the date of trial, the Plaintiff received the following income:

1. $960 in maintenance from the Defendant from October 2003 to April 2004 ($40 per week for six months).
2. $1,000 in wages from Churabusco Plastic Rubber Factory.
3. $,1000 in wages from a Mexican restaurant.
4. $150 in wages from a department store during the holiday season.
5. $4,000 in wages from AOL call center.
6. $100 in wages from a store during the holiday season.
7. $1,000 in wages working in customer service for a manufacturing business.
8. $800 in wages from a green house.

5

9.       $100 in wages from miscellaneous one-day assignments from a temporary agency.

The total amount of income from these sources is $9,110.

The Plaintiff attempted to obtain other employment, but for various reasons was unsuccessful. For example, she turned down a second interview with Verizon because she did not have enough money to travel from Florida to Chicago for the interview. She was also concerned that she would not have the funds to stay in Chicago or to return to Florida if she did not get the job.

Also, while living in Florida, the Plaintiff completed real estate school and received her certificate, but did not pass the real estate exam on her first, and only, attempt. The Plaintiff was told that there was a good market for real estate in Florida. She also knew that there was a Russian community in the area that she thought she could work with. She did not get an opportunity to take the exam a second time before moving to Michigan.

When she moved from Florida to Michigan, the Plaintiff focused her attention on looking for jobs she thought she could realistically obtain, such as babysitting or housekeeping positions. She did not think real estate was a viable option for her in Michigan because others told her the market was slow and that successful agents relied on their connections. In addition, she would have had to go to school again. While in Michigan, the Plaintiff applied with sixteen different temporary agencies for employment.

In 2003, during her marriage, the Plaintiff completed a basic medical transcription class at Ivy Tech. However, she did not finish a second, more advanced course or obtain a degree after her separation and divorce from the Defendant.

The Plaintiff holds a Masters of Arts in linguistics and English from the State University in Russia, which she received in 1988. While in Russia, the Plaintiff was employed by the United

Nations Mission as a secretary and translator for the chief security officer. From 1998 until her move to the United States, the Plaintiff was self-employed as a translator for various businesses. These job skills did not transfer well to Fort Wayne, Tampa, or Kalamazoo, and the Plaintiff did not have enough money to go to Chicago or New York in hopes that her translating skills would get her a job there. The Plaintiff did contact a company in Fort Wayne regarding translating, but was told the need was for Spanish translators. She also contacted the American Translators Association, which did not result in any job leads because she did not have $300—$400 to pay for a required test. Her applications for other translator jobs are still pending.

**C. Federal Poverty Guidelines**

The poverty guidelines for 2003, 2004, and 2005, for a household size of one person, are as follows:

2003:   $8,980;

2004:   $9,310;

2005:   $9,570.

68 Fed. Reg. 26,6457–58 (Feb. 7, 2003); 69 Fed. Reg. 30,7335–38 (Feb. 13, 2004); 70 Fed. Reg. 33,8373–75 (Feb. 18. 2005).

The following figures represent 125% of the proceeding poverty levels:

2003:   $11,225;

2004:   $11,637.50;

2005:   $11,962.50.

7

## LEGAL ANALYSIS

**A. What is the appropriate household size to calculate damages?**

For purposes of this Court's discussion of damages, there are two requirements that a sponsor must meet before his Affidavit of Support will be considered adequate to overcome an immigrant's public charge ground of inadmissibility. First, he must show that he has an income of at least 125% of the Federal poverty line for his household size, which includes the immigrant he intends to sponsor. Second, he must agree to support an immigrant at a level that will maintain her income at 125% or more of the Federal poverty guideline for the size of the family involved. The Defendant satisfied both requirements when he executed the Affidavit of Support, but it is only the second that is relevant to determine the Plaintiff's damages. Complicating matters in this case is the fact that the household size used to determine the Defendant's eligibility and the family size that must be considered when calculating the amount of support the Defendant owes the Plaintiff are not the same.

Part 4 of the Affidavit of Support, "Eligibility to Sponsor" describes the conditions that must be met before a person can sponsor an immigrant. It provides that one aspect of a prospective sponsor's eligibility is his demonstrated ability to maintain an annual income at or above 125% of the Federal poverty line. The assessment includes the sponsor's current employment, household size, and household income. (Aff. of Support, Part 4.)

Federal regulations provide that "[i]n order for the intending immigrant to overcome the public charge ground of inadmissibility, the sponsor must demonstrate the means to maintain an annual income of at least 125 percent of the Federal poverty line." 8 C.F.R. § 213a.2(c)(2) (describing sponsorship requirements).

8

> [R]eference to an annual income equal to at least a particular percentage of the Federal poverty line means an annual income equal to at least such percentage of the Federal poverty line for a family unit of a size equal to the number of members of the sponsor's household (including family and non-family dependents) plus the total number of other dependents and aliens sponsored by that sponsor.

8 U.S.C. § 1183a(f)(6)(iii) (included in subsection entitled "Demonstration of means to maintain income"). The "household size" is obtained by adding the following

> (1) the sponsor and all persons living at the same residence with the sponsor who are related to the sponsor by birth, marriage, or adoption; (2) all persons whom the sponsor has claimed as a dependent on the sponsor's Federal income tax return for the most recent tax year, even if such persons do not live at the same residence as the sponsor; and (3) the number of aliens the sponsor has sponsored under any prior Forms I-864 for whom the sponsor's support obligation has not terminated, plus the number of aliens to be sponsored under the current Form I-864, even if such aliens do not or will not live at the same residence as the sponsor.

8 C.F.R. § 213a.1.

As a sponsor's household size increases, so does the level of income required to demonstrate that he can meet his obligation. However, the sponsor is not required to show that he can support each person, separately, who resides in his household at 125% of the Federal poverty level. In other words, the sponsor's income is not divided among the members of the household and each part assessed against the poverty level. Rather, the household is considered one unit for which the sponsor must maintain his income. The sponsor's full income is imputed to the unit, and thus, to all the household members equally and fully. If this were not so, and each person was considered separately, the sponsor would have to earn significantly more than 125% of the poverty level to be eligible to sponsor an immigrant.

When the Defendant completed the Affidavit of Support in 2002, he used the 2002 poverty guidelines for a household size of three. As required by statute, he included himself, the Plaintiff, and a dependent child in his household size. The Plaintiff's reported income was more than 125%

9

of the Federal poverty guidelines for a household of three and thus, he was considered eligible to become a sponsor.

Thus far, the Court has limited its discussion to sponsorship requirements—what a person is required to demonstrate to sponsor an immigrant. These requirements are distinct from the requirement to provide support to maintain an immigrant at a certain financial level. In the Affidavit, the Defendant agreed to provide the Plaintiff "whatever support is necessary to maintain [her] at an income that is at least 125 percent of the Federal poverty guidelines." (Aff. of Support, Part 7, Use of Affidavit of Support to Overcome Public Charge Ground of Inadmissibility.) This tracks the statute's mandate that no affidavit of support will be accepted by the Attorney General or by any consular officer to overcome public charge grounds of inadmissibility unless the affidavit is executed by the sponsor as a contract "in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable." 8 U.S.C. § 1183a(a)(1)(A). The statute's definition of "Federal poverty line" is the "level of income equal to the official poverty line . . . that is applicable to a family of the size involved." 8 U.S.C. § 1183a(h).

In this case, since the Plaintiff is no longer married to and living with the Defendant, the family size involved is one person, the Plaintiff. Thus, the Defendant is obligated to provide support to keep the Plaintiff at an annual income of not less than 125% of the poverty line for one person. Basing the Plaintiff's recovery on a one-person household is consistent with the statute, remedies available for breach of contract, and the purpose behind the statute and the Affidavit of Support.

Case law dictates that breach of contract damages should place the aggrieved party in the place he would have been in had the breach not occurred. *Chicago Painters and Decorators*

10

*Pension, Health and Welfare and Deferred Sav. Plan Trust Funds v. Karr Bros., Inc.,* 755 F.2d 1285, 1290 (7th Cir. 1985) (labor contract case). The Plaintiff is not entitled to be placed in a better position than she would have been had the breach not occurred. *Showalter, Inc. v. Smith*, 629 N.E.2d 272, 276 (Ind. Ct. App.1994). Accordingly, the Plaintiff is not entitled to 125% of the poverty level for the original household size. Not only would the Plaintiff be placed in a better position than had the breach not occurred, but such an interpretation would have a higher potential of depleting the sponsor's income through support obligations to the sponsored alien alone, leaving other family members living below the poverty level and likely to become public charges. This was surely not Congress's intent.

However, neither would awarding one-third of the 125% figure, to account for the Plaintiff's portion of the household size, be adequate to keep the Plaintiff from becoming a public charge or meet the sponsor's obligation as described in the Affidavit itself.

Having considered the statutory language, the contract, congressional intent, and contract law principles, the Court finds that awarding damages using the poverty level for a one-person household is appropriate.

**B. What is the appropriate poverty level to determine damages?**

The Defendant urges the Court to look to the four corners of the contract and use the 2002 poverty level to determine the Plaintiff's damages. He argues, in essence, that the Affidavit does not contemplate adjusting the level of support to correspond to increasing poverty thresholds.

The Defendant's argument for a static level of support is not convincing. The sponsor is obligated to "maintain the sponsored alien at an annual income that is not less than 125 percent of

11

the Federal poverty line *during the period in which the affidavit is enforceable.*" 8 U.S.C. § 1183a(a)(1)(A) (emphasis added). During the period of enforceability, the Federal poverty line is subject to change, as is the sponsor's obligation. If the sponsor's obligation did not change, the immigrant could potentially become a public charge and dependent on federal means-tested benefits at some point during the life of the contract as measured by the changing poverty line. The Affidavit would then cease to fulfill its purpose. Moreover, the Act defines "Federal poverty line" as the "level of income equal to the official poverty line (as defined by the Director of the Office of Management and Budget, *as revised annually* by the Secretary of Health and Human Services, in accordance with section 9902(2) of Title 42) . . . ." 8 U.S.C. § 1183a(h).

The Court will calculate damages using the Federal poverty guidelines from 2003, 2004, and 2005.

**C. Should the Plaintiff's reward be reduced for failure to request maintenance and maintain employment?**

The Defendant spends much of his post-trial brief arguing that the Plaintiff should not recover under the Affidavit of Support because she failed to mitigate her damages when she did not request maintenance during the divorce proceedings and did not make a good faith effort to procure employment. The Defendant argues that these failures go not only to mitigation, but evidence the Plaintiff's failure to substantially perform her duties as a third party beneficiary as well as her breach of the terms and conditions of the contract, such that the Plaintiff should not recover any damages.

First, as the Court already held in its Opinion granting summary judgment on the issue of liability, the Plaintiff is not precluded from enforcing the Affidavit of Support if she has not attained

employment or otherwise sought to support herself. Such a failure does not end a sponsor's obligation to provide support. Second, the Defendant has provided no legal authority for his contention that a third party beneficiary can breach a contract—that such an event is legally possible given that the third party beneficiary is not actually a party to the contract.

The issues of mitigation and set-off, however, are properly before the Court. Any funds the Plaintiff received after her separation should be subtracted from the amount the Defendant must provide to "maintain" the Plaintiff at 125% of the poverty level. The Plaintiff does not dispute this.

There is no body of federal common law governing the contract at issue in this case. *Cf. Merk v. Jewel Food Stores Div. of Jewel Cos.*, 945 F.2d 889, 892 (7th Cir. 1991) (federal common law applies to suits for breach of a collective bargaining agreement). However, the duty to mitigate, or avoid, damages is a basic tenant of contract law. "It is usually said that the plaintiff is under a duty to mitigate damages." 11 Williston on Contracts § 1353 at 274 (3d. ed.) (cited in *Lincoln Nat'l Life Ins. Co. v. NCR Corp.*, 603 F. Supp. 1393, 1405–06 (N.D. Ind. 1984)). "However, the truth seems rather to be that damages which the plaintiff might have avoided with reasonable effort without undue risk, expense, or humiliation are either not caused by the defendant's wrong or need not have been, and therefore are not to be charged against him." *Id.*

The Defendant does not present any plausible explanation why the Plaintiff's failure to seek maintenance should reduce her award. Any maintenance would have been paid by the Defendant and would not have reduced the amount the Defendant ultimately had to pay the Plaintiff. It simply would have been money owed by order of the state court instead of by this Court. Moreover, the Plaintiff was within her rights to enforce the Affidavit of Support in this Court. *See* 8 U.S.C. § 1183a(e).

As to employment, the Court finds that the Plaintiff made reasonable efforts to obtain employment and be self-sufficient. The Court found credible the Plaintiff's testimony regarding her contact with temporary agencies, placement of newspaper ads, her concern regarding lack of funds to travel long distances to interview, the obstacles to entering the real estate market in Michigan, and the lack of English/Russian translator jobs, particularly in light of her desperate financial situation.

While the amount of money the Plaintiff obtained through maintenance and employment during the relevant period will be used to reduce her recovery, the Court finds no basis in further limiting the Plaintiff's award of damages for failure to mitigate.

## FINAL DAMAGE CALCULATIONS

The Plaintiff has met her burden of proving that she suffered damages. The Affidavit of Support provides for the measure of damages that would put the Plaintiff in as good a position as she would have been in had the contract been performed. The Plaintiff has also mitigated her damages.

Damages from June 3, 2003, the date of the parties' final separation, to the date of this Opinion and Order are calculated as follows:

2003: $11,225 x 212/365 = $6,519.73

2004: $11,637.50

2005: $11,962.50 x 298/365 = $9766.64

Total for 2003–2005: $27,923.87

Total adjusted for income received: $29,923.87 – $9110 = $18,813.87

**MOTION FOR SANCTIONS**

The Plaintiff's motion for attorney's fees that she incurred in filing her motion to strike the defendant's portion of the final pretrial order and for sanctions is still pending. The Court finds that this is not a case in which to exercise its discretion to award sanctions and denies the Plaintiff's request. The motion to strike and to preclude the Defendant from presenting evidence was unsuccessful and the Plaintiff was not prejudiced by the Defendant's late filing of his final pretrial contentions.

**CONCLUSION**

The Clerk will enter judgment in favor of the Plaintiff and against the Defendant in the amount of $18,813.87. The statute outlines the events that terminate the Defendant's obligation. Until one of those events transpires, the Defendant has a continuing duty to maintain the Plaintiff at 125% of the Federal poverty level.

The Plaintiff may file her request for attorney's fees pursuant to Federal Rule of Civil Procedure 54. The Plaintiff's motion for sanctions [DE 51] is DENIED.

SO ORDERED on October 25, 2005.

         s/ Theresa L. Springmann
        THERESA L. SPRINGMANN
        UNITED STATES DISTRICT COURT